IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MATTHEW MAGIDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07CV505 |
| | ) | |
| WACHOVIA BANK, NA, BRUCE YOUNG, and AMANDA ROOF, | ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

TILLEY, District Judge.

This matter is currently before the Court on Wachovia Bank, NA, Bruce Young, and Amanda Roof's (collectively "Defendants") Motion to Transfer [Doc. # 8] and Defendants' Partial Motion to Dismiss [Doc. # 10]. For the reasons set forth below, the Motion to Transfer [Doc. # 8] is DENIED, and the Partial Motion to Dismiss [Doc. # 10] is GRANTED.

I.

In the light most favorable to Mr. Magidson, the allegations in the complaint assert that: Mr. Magidson, a current resident of Orange County, North Carolina, was hired by Defendant Wachovia Bank, NA, ("Wachovia") in 2002 as an International Swaps and Derivatives Associate. Mr. Magidson held the position of Vice President in Wachovia's Fixed Income Derivatives Department.

In February 2005, Mr. Magidson was diagnosed with and began receiving

treatment for generalized anxiety disorder. As a result of this disorder, Mr. Magidson worried excessively about a variety of everyday problems. In 2005, Mr. Magidson told his manager, Defendant Bruce Young, and a co-worker, Defendant Amanda Roof, that he had been diagnosed with, and was taking medication for, generalized anxiety disorder. Complaining is a known and recognized symptom of generalized anxiety disorder.

After learning about Mr. Magidson's anxiety disorder, employees of Wachovia, including Mr. Young and Ms. Roof, mocked and belittled Mr. Magidson when he complained. For example, Mr. Magidson was repeatedly told to stop whining or crying like a baby. In addition, Ms. Roof put a "whine jar" on her desk and told other employees that when Mr. Magidson complained, he should put money into the whine jar.

On numerous occasions, when Mr. Magidson would ask Mr. Young for help or seek a reasonable accommodation for his condition, Mr. Young would hand him a quarter or tell him to put a quarter in the whine jar. During one meeting where Mr. Magidson was attempting to discuss his increasing job responsibilities and how that affected his anxiety disorder, Mr. Magidson was crying and visibly upset. In response, Mr. Young mocked Mr. Magidson and threatened to terminate him. Ultimately, in October 2005, Mr. Magidson suffered an emotional breakdown, left work, and sought medical attention. Mr. Magidson's treating physician advised him not to return to work. It was only after this breakdown that Ms. Roof

removed the whine jar from her desk and Mr. Young reported Mr. Magidson's concerns to the human resources department.

On May 25, 2007, Mr. Magidson filed an action against the Defendants in the General Court of Justice, Superior Court Division in Orange County, North Carolina. The Defendants removed the action to this Court on June 29, 2007. On July 9, 2007, Defendants filed a Motion to Transfer and a partial Motion to Dismiss.

II.

Defendants filed their motion to transfer pursuant to Title 28 U.S.C. § 1404(a), which provides that a district court may transfer an action "[f]or the convenience of parties and witnesses [and] in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006).

In deciding whether to transfer a case, Courts consider and weigh the following judge-made factors: (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9)

local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws. Plant Genetic Sys. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996).

In this case, Mr. Magidson filed this action in the Orange County Superior Court, which the Defendants removed to the Middle District of North Carolina. Defendants assert that this action should be transferred to the Western District of North Carolina because all of the allegations in the Complaint are related to Mr. Magidson's employment with Wachovia in Charlotte, which is located in the Western District. Defendants assert that it would be more convenient to have this case proceed in the Western District of North Carolina because potential witnesses and other relevant evidence, including personnel records and documents related to Mr. Magidson's job performance are located in Charlotte. Defendants further assert that a trial in Charlotte would be much less expensive to the parties. Finally, Defendants assert the only connection to the Middle District is Mr. Magidson's residence in Orange County.

When considering and weighing the factors on a motion to transfer pursuant to § 1404(a), the plaintiff's choice of forum is accorded great weight, particularly where the plaintiff has brought suit in his home forum. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981). "[U]nless the balance [of factors] is

4

strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

In this case, Defendants seek the transfer of this matter from Greensboro, in the Middle District of North Carolina, to Charlotte, in the Western District of North Carolina – a distance of approximately 85 miles within the same state. Thus, many of the factors to be considered such as enforceability of a judgment, availability of compulsory process, and choice of law issues, are not relevant to this action. In addition, this does not appear to be a document intensive case, and it is unlikely that it will be burdensome for the parties to transport any documents associated with Mr. Magidson's employment to Greensboro. Moreover, with the exception of trial and perhaps an isolated hearing, the Case Management/Electronic Case File System has eliminated the need for the parties to travel to the Court for any document filings. Thus, any travel required for the Defendants will be minimal, at worst. In sum, the remaining factors do not weigh strongly in support of transferring this matter to the Western District of North Carolina, and Mr. Magidson's choice of forum should be respected.[1] The Motion to Transfer is DENIED.

---

[1] Defendants' reliance on Perkins v. Princeville, 340 F. Supp. 2d 624 (M.D.N.C. 2004), is misplaced because the plaintiff in that case did not oppose the transfer of the case from the Middle District to the Eastern District of North Carolina. In this case, Mr. Magidson has opposed the transfer to the Western District.

5

III.

Defendants have also filed a partial Motion to Dismiss seeking the dismissal of Mr. Magidson's claim pursuant to the North Carlina Persons with Disabilities Protection Act and Mr. Magidson's claim for Intentional/Negligent Infliction of Emotional Distress. These claims will be addressed in turn.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is intended to test the legal sufficiency of the complaint, not to decide the merits of the action. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991); Food Lion, Inc. v. Capital Cities/ABC, Inc., 887 F. Supp. 811, 813 (M.D.N.C. 1995). In considering a Rule 12(b)(6) motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). However, as the Supreme Court has recently instructed, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, No. 05-1126, 2007 WL 1461066, at *8 (U.S. May 21, 2007) (internal quotations and citations omitted).

A.

Defendants assert that Mr. Magidson claim under the North Carolina Persons with Disabilities Protection Act ("NCPDPA") should be dismissed because, pursuant

6

to the terms of the NCPDPA, a plaintiff cannot pursue a claim under the NCPDPA simultaneously with a claim under the Americans with Disabilities Act ("ADA"). N.C. Gen. Stat. § 168A-11(c); Cone ex rel. Cone v. Randolph County Schools, 302 F. Supp. 2d 500, 514 (M.D.N.C. 2004) (noting that plaintiff's NCPDPA claim failed as a matter of law because it arose out of the same facts a the plaintiff's ADA claim); Bowling v. Margaret R. Pardee Mem. Hosp., 179 N.C. App. 815, 820-21, 635 S.E.2d 624, 629 (explaining that the "clear meaning of the language of N.C. Gen. Stat. § 168A-11(c) does not allow a plaintiff to file simultaneous federal and state claims").

Mr. Magidson has not responded to the Defendants' motion to dismiss the NCPDPA claim and appears to concede that he cannot maintain both an NCPDPA claim and an ADA claim based on the same facts and circumstances. The Defendants' Motion to Dismiss the NCPDPA claim is GRANTED, and that claim is DISMISSED.

B.

The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct (2) which is intended to and does cause (3) severe emotional distress in another. Stamper v. Charlotte-Mecklenburg Bd. of Educ., 143 N.C. App. 172, 174, 544 S.E.2d 818, 820 (2001). Defendants assert that Mr. Magidson's intentional infliction of emotional distress claim must be dismissed because the conduct alleged in the complaint does not constitute

7

extreme and outrageous conduct as a matter of law.

Conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts, § 46 cmt. (d) (1965)). Whether conduct meets this standard is a question of law. Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

As this Court has previously stated, "in employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable." Kovack v. Sts. & Aves. Rest. Corp., No. 1:00CV145, 2001 WL 604179, at *2 (M.D.N.C. Apr.27, 2001) (internal quotations omitted). Therefore, "even when a defendant's actions during the course of employment are considered 'intemperate,' such conduct will generally be insufficient to state a cause of action for intentional infliction of emotional distress." Id. The plaintiff's burden to establish extreme and outrageous conduct in the employment setting is "extremely rigorous." Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000).

North Carolina courts have been reluctant to extend intentional infliction of emotional distress liability in the workplace. See, e.g., Hogan, 79 N.C. App. at 493-94, 340 S.E.2d at 122-23 (affirming a grant of summary judgment against a

8

plaintiff who alleged that, while she was pregnant, her supervisor required her to carry heavy loads, denied her pregnancy leave, refused to let her go to the hospital when labor pains began, and fired her when she thereafter left without permission). Indeed, North Carolina courts have often found extreme and outrageous conduct only in cases involving sexual advances, obscene language, and inappropriate touching. See Guthrie v. Conroy, 152 N.C. App. 15, 22-23, 567 S.E.2d 403, 409-10 (2002) (collecting cases). As the Hogan court explained, plaintiffs must put up with "mere insults, indignities, and threats," and "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." 79 N.C. App. at 493, 340 S.E.2d at 123 (quoting Restatement (Second) of Torts, § 46 cmt. (d) (1965)).

Plaintiff argues that Defendants' conduct is extreme and outrageous because the defendants specifically mocked his mental condition. For example, Mr. Magidson asserts that Ms. Roof "targeted her harassment specifically to prey on [his] sensitivity and vulnerability." In a similar situation, Judge Osteen, Sr. held that continued harassing conduct was not extreme and outrageous even where "Defendants knew of Plaintiff's mental condition and were informed that continued harassment could worsen Plaintiff's condition." Sheaffer v. County of Chatham, 337 F. Supp. 2d 709, 733 (M.D.N.C. 2004) (involving plaintiff who suffered from anxiety and depression).

9

While persons ridiculing co-workers for an anxiety condition, as it is asserted the Defendants in this case have done, should be embarrassed by conduct that demonstrates insensitivity and poor judgment, it cannot be said that conduct crosses the high bar set by the North Carolina courts in the employment context, going "beyond all possible bounds of decency" and "regarded as atrocious, and utterly intolerable in a civilized community." Therefore, Defendants' Motion to Dismiss the Intentional Infliction of Emotional Distress claim is GRANTED, and that claim is DISMISSED.

C.

An action for negligent infliction of emotional distress has three elements: (1) defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) defendant's conduct, in fact, caused plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

To establish that a defendant engaged in negligent conduct the plaintiff must show "(1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury." Hairston v. Alexander Tank & Equipment Co., 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984). A legal "duty is defined as an

10

obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." <u>Davis v. N.C. Dept. of Human Resources</u>, 121 N.C. App. 105, 112, 465 S.E.2d 2, 6 (1995).

Defendants assert that Mr. Magidson "has wholly failed to allege in the Complaint any negligent conduct whatsoever by Defendants Young and Roof." As to Ms. Roof, the Complaint identifies numerous acts committed by Ms. Roof and asserts that those acts were "negligent and committed without regard for Plaintiff's known medical condition." On similar facts, Judge Beaty held that "[w]hen the plaintiff's complaint alleges acts . . . that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress." <u>Barbier v. Durham County Bd. of Educ.</u>, 225 F. Supp. 2d 617, 631 (M.D.N.C.2002) (dismissing negligent infliction of emotional distress claim against individual defendant where the complaint consisted "solely of allegations of intentional sexual harassment and not negligent acts" by the individual defendant). Mr. Magidson has not alleged any negligent acts by Ms. Roof. Therefore, the negligent infliction of emotional distress claim against Ms. Roof is DISMISSED.

As to Mr. Young, Mr. Magidson alleges that Mr. Young was his supervisor, that he told Mr. Young about the symptoms, diagnosis, and treatment of his disorder, and that he went to Mr. Young seeking assistance with the repeated

11

ridicule and mocking by his co-employees and that Mr. Young did not take any corrective action in response to his complaints.  Mr. Magidson asserts that due to his "knowledge and position, Young had a special duty owed" to Mr. Magidson. Citing a jury instruction regarding peculiar susceptibility, Mr. Magidson asserts that because Mr. Young knew of his mental condition, he had a duty "to refrain from conduct that was reasonably foreseeable" to cause Mr. Magidson emotional distress.

The peculiar susceptibility doctrine is related to forseeability and the proximate causation element of a negligence claim.  The fact that a plaintiff may be particularly susceptible to injury does not give rise to a legal duty of care. Mr. Magidson cites no authority nor has any this Court found any supporting the proposition that a supervisor has a legal duty to protect a subordinate from the specific conduct alleged to have been undertaken by Mr. Magidson's co-workers. The Defendants' Motion to Dismiss the negligent infliction of emotional distress claim as to Mr. Young is GRANTED.

IV.

In sum, Defendant's Motion to Transfer [Doc. # 8] is DENIED, and the Partial Motion to Dismiss [Doc. # 10] is GRANTED.

This the day of December 27, 2007

          /s/ N. Carlton Tilley, Jr.
United States District Judge

13

Case 1:07-cv-00505-NCT-RAE   Document 22   Filed 12/28/07   Page 13 of 13